## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ANDREW THRASHER,                          Case No. 1:12-cv-151
              Plaintiff,                  Beckwith, J.
                                          Litkovitz, M.J.
    vs.


COMMISSIONER OF                           **REPORT AND**
SOCIAL SECURITY,                          **RECOMMENDATION**
              Defendant.


Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement

of Errors (Doc. 9), the Commissioner's Memorandum in Opposition (Doc. 12), and plaintiff's

reply memorandum (Doc. 14).

## I. Procedural Background

Plaintiff protectively filed an application for SSI on January 15, 2008, alleging disability

since October 12, 1999, due to epileptic seizures and bipolar disorder. (Tr. 146, 150). Plaintiff's

application was denied initially and upon reconsideration. Plaintiff, proceeding pro se, requested

and was granted a de novo hearing before Administrative Law Judge (ALJ) Christopher McNeil.

(Tr. 19-67). Plaintiff appeared at the ALJ hearing with his case worker from Greater Cincinnati

Behavioral Health Services (GCBHS), Stephen Moore. A vocational expert (VE) and a medical

expert (ME), clinical psychologist Dr. Mary Buban, Psy.D., also appeared and testified at the

ALJ hearing. On May 17, 2010, the ALJ issued a decision denying plaintiff's SSI application.

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-

(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the

sequential evaluation process.  *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir.

2004).  Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant

can perform other substantial gainful employment and that such employment exists in the

national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir.

1999).

### B.  The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since January 15, 2008, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: seizure disorder, schizoaffective disorder, mood disorder/bipolar disorder, antisocial personality disorder, and a history of alcohol and cannabis abuse (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds the [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:  Due to a history of seizures, he should never climb ladders, rope or scaffolds and should not work at unprotected heights or around hazardous machinery.  Due to his mental limitations, the work must be simple and repetitive, with no production quotas or strict time standards, no contact with the general public, and no more than occasional contact with coworkers and supervisors.

3

5. The [plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[1]

6. The [plaintiff] was born [in] . . . 1966 and was 41 years old, which is defined as a "younger individual age 18-49," on the date the application was filed (20 CFR 416.963).

7. The [plaintiff] has a "limited" education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[2]

6. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since January 15, 2008, the date the application was filed (20 CFR 416.920(g)).

(Tr. 11-15).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1] Plaintiff's past relevant work was as a restaurant cook. (Tr. 14).

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform unskilled medium jobs such as floor waxer (500 jobs in the regional economy and 500,000 jobs in the national economy) and warehouse worker (4,000 jobs in the regional economy and 1,000,000 jobs in the national economy); unskilled light jobs such as machine tender (2,000 jobs in the regional economy and 200,000 jobs in the national economy) and packager (3,000 jobs in the regional economy and 300,000 jobs in the national economy); and unskilled sedentary jobs such as inspector (1,000 jobs in the regional economy and 100,000 jobs in the national economy) and sorter (400 jobs in the regional economy and 50,000 jobs in the national economy).  (Tr. 15).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

The pertinent medical findings and opinions have been adequately summarized in the plaintiff's brief and will not be repeated here. (Doc. 9 at 3-7). Where applicable, the Court will identify the medical evidence relevant to its decision.

Plaintiff assigns two errors in this case: (1) the ALJ failed to fulfill his duty to "fully and fairly" develop the record (*Id*. at 13); and (2) the ALJ's decision is not adequately supported by the evidence.

5

### 1. The duty of the ALJ to adequately and fairly develop the record

### a. The ALJ's duty under the law

Although a claimant seeking disability benefits bears the ultimate burden of establishing his entitlement to such benefits, the ALJ has an affirmative duty to fully develop the factual record upon which his decision rests. *Lashley v. Secretary of Health & Human Services,* 708 F.2d 1048 (6th Cir. 1983). The ALJ's duty applies in every case, regardless of whether or not the claimant is represented by legal counsel. *Id.*; *Vaca v. Com'r of Soc. Sec.*, No. 1:08-cv-653, 2010 WL 821656, at *5 (W.D. Mich. Mar. 4, 2010) (citing *Osburn v. Apfel,* No. 98-1784, 1999 WL 503528, at *7 (6th Cir. July 9, 1999) (quoting *Richardson,* 402 U.S. at 411) ("the responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge"); *Echevarria v. Sec'y of Health and Human Services,* 685 F.2d 751, 755 (2nd Cir. 1982) ("given the non-adversarial nature of a benefits proceeding, the ALJ 'must himself affirmatively develop the record.'")). *See also Sims v. Apfel,* 530 U.S. 103, 110-11 (2000) (although the claimant bears the ultimate burden of establishing that he is entitled to disability benefits, courts have recognized that social security proceedings are "inquisitorial rather than adversarial," and it is the ALJ's duty to investigate the facts and develop arguments both for and against granting benefits).

When a disability claimant is not represented by counsel at the administrative hearing, the ALJ has a special duty to ensure that a full and fair administrative record is developed. *Lashley,* 708 F.2d at 1051; *Vaca,* 2010 WL 821656, at *5 (where the claimant is unrepresented, is incapable of presenting an effective case, and is unfamiliar with the hearing procedures, the ALJ has "a special, heightened duty to develop the record") (citing *Nabours v. Commissioner of*

6

*Social Security,* 50 F. App'x 272, 275 (6th Cir. 2002)). This heightened duty arises from the remedial nature of the Social Security Act, as well as from the recognition that the ultimate responsibility for ensuring that every claimant receives a full and fair hearing lies with the administrative law judge. *Lashley,* 708 F.2d at 1051 (citing *Richardson,* 402 U.S. 389). *See also Elam v. Astrue,* No. 3:11-cv-00234, 2012 WL 2409218, at *7 (S.D. Ohio June 26, 2012) (Ovington, M.J.) (Report and Recommendation), *adopted sub nom., Elam v. Comm'r of Soc. Sec.,* 2012 WL 4483422 (S.D. Ohio Sept. 27, 2012) (Rice, J.). Moreover, the ALJ must take special care to ensure he fulfills his duty in situations where the unrepresented claimant suffers from a mental impairment. *Burrows v. Comm'r of Soc. Sec.,* No. 12-cv-10109, 2012 WL 5411113, at *9 (E.D. Mich. Sept. 28, 2012) (Report and Recommendation), *adopted,* 2012 WL 5413174 (E.D. Mich. Nov. 6, 2012) (citing *Morlando v. Astrue,* No. 3:10cv1258, 2011 WL 4396785, at *4 (D. Conn. Sept. 20, 2011) (recognizing that in addition to the "special solicitude" the ALJ must show pro se claimants, "extra care" is required where a claimant's mental capacity is in question)).

To satisfy his heightened duty to develop the record, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and he must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Lashley,* 708 F.2d at 1052 (citations omitted). In addition, an ALJ must obtain "pertinent, available medical records which come to his attention during the course of the hearing." *Burrows,* 2012 WL 5411113, at *9 (citing *Figard v. Commissioner of Soc. Sec.,* No. 1:09-cv-425, 2010 WL 3891211, at *7 (W.D. Mich. July 1, 2010) (quoting *Carter v. Chater,* 73 F.3d 1019, 1022 (10th Cir. 1996)).

The determination of whether the ALJ has satisfied his duty to fully and fairly develop the record is not amenable to the application of bright line tests, but instead must be made on a case-by-case basis. *Lashley*, 708 F.2d at 1052; *Duncan v. Sec'y of Health and Human Services*, 801 F.2d 847, 856 (6th Cir. 1986); *Vaca*, 2010 WL 821656, at *6 (citing *Osburn*, 1999 WL 503528, at *7) (citation omitted). In making this determination, "the key inquiry is whether the administrative law judge fully and fairly developed the record through a conscientious probing of all relevant facts." *Vaca*, 2010 WL 821656, at *6 (citing *Rowden v. Chater*, No. 95-5630, 1996 WL 294464, at *1 (6th Cir. June 3, 1996)). The ALJ is not required to factually develop matters of which he has no notice. *Id.* (citing *Rowden*, 1996 WL 294464, at *2); *Osburn*, 1999 WL 503528, at **7-8) (a claimant must "support his subjective complaints with objective evidence" before the ALJ can be required to "develop a record" regarding the same).

The court in *Vaca* explained that a failure to fully develop the factual record is often found in cases where the ALJ conducted only superficial or perfunctory questioning, as well as in cases where the ALJ failed to obtain all available medical records and documentation. *Vaca*, 2010 WL 821656, at *6 (citing *Lashley*, 708 F.2d at 1052) (ALJ failed to fulfill his duty to fully develop the record where he only superficially questioned the claimant concerning his daily activities and his physical limitations); *Rogers v. Sec'y of Health and Human Services*, No. 84-5879, 1986 WL 16548, at *3 (6th Cir. Feb. 28, 1986) (ALJ failed to fully develop the record where he neither conducted any inquiry into the claimant's emotional problems nor attempted to more fully understand his physical limitations); *Echevarria*, 685 F.2d at 755-56; *Frank v. Chater*, 924 F.Supp. 416, 428-29 (E.D. N.Y. 1996) ("the ALJ's cursory examination of [the claimant] was insufficient considering the importance to be accorded a claimant's testimony"),

8

*abrogated on other grounds, Lamay v. Commissioner of Social Sec.*, 562 F.3d 503 (2nd Cir. 2009)). *But see Nabours*, 50 F. App'x at 275-76 (the ALJ did not err by failing to fully develop the administrative record where the record showed that the pro se plaintiff was able to put on her case with no discernible problems, she was "sufficiently articulate in her direct testimony, she mustered an impressive amount of supporting medical evidence, and she was attuned enough to the testimony of the VE so that she was able (with the help of the ALJ) to conduct cross-examination and cause the ALJ to submit a new hypothetical question to the VE."); *Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (holding ALJ did not have special duty to develop the record where although the claimant chose to proceed without counsel, the hearing transcript disclosed her grasp of the proceedings and the adequacy of her case presentation to the ALJ); *Duncan*, 801 F.2d at 856 (finding the ALJ conducted an adequate hearing where the brevity of the hearing did not result in unfair or unsupported conclusions, the claimant's mistaken answers to questions by ALJ did not unfairly taint the ALJ's findings, and the claimant had not suggested, and the court was unable to determine, what further information could have possibly been brought forth at the hearing that would have "enhanced a determination of disability").

### b. The ALJ failed to fulfill his duty to adequately and fairly develop the record.

Plaintiff alleges that the ALJ did not fulfill his duty to fully and fairly develop the record pertaining to both his physical and mental impairments. Plaintiff contends that the ALJ deprived him of a fair hearing by failing to obtain the following relevant evidence: (1) records of two recent psychiatric hospitalizations that occurred in April and August 2009; (2) recent treatment records from plaintiff's treating mental health providers; (3) the progress notes of Mr. Moore,

9

plaintiff's case manager at GCBHS; and (4) the progress notes of plaintiff's treating physician or neurologist. (Doc. 9 at 14-16). Plaintiff further contends that the ALJ failed to adequately develop the record concerning the frequency and nature of plaintiff's seizures through questioning at the hearing. Plaintiff also argues that the ALJ violated agency rules and regulations, including 20 C.F.R. § 416.912(e), by failing to contact plaintiff's treating sources for further information needed to reach a determination regarding plaintiff's disability status and by failing to order consultative evaluations. (*Id.* at 14-15).

The Commissioner argues that it is ultimately plaintiff's burden to show that he is disabled, and plaintiff failed to carry his burden because he did not present any evidence of disability. (Doc. 12 at 7-8). The Commissioner contends that the ALJ fulfilled his duty to develop the record by giving plaintiff and Mr. Moore additional time to obtain records, by explaining the importance of obtaining additional records, and by informing plaintiff and Mr. Moore that plaintiff likely would not be considered disabled based on the evidence before the ALJ. (*Id.* at 9, citing Tr. 43-65).

Initially, the Court finds that although plaintiff has the ultimate burden to prove he is disabled, the ALJ owed plaintiff a heightened duty in this case to insure that plaintiff received a full and fair hearing and that his claim was adequately developed. Plaintiff was proceeding pro se and without the assistance of a representative. The Commissioner states that Mr. Moore was serving as "Plaintiff's representative at the hearing," (Doc. 12 at 8, n. 2), but this is a mischaracterization of Mr. Moore's role and of the record. Although Mr. Moore accompanied plaintiff to the hearing, Mr. Moore made it clear to the ALJ at the beginning of the hearing that he was not capable of adequately representing plaintiff's interests in connection with his

10

disability claim and the administrative proceeding. (Tr. 24). The ALJ acknowledged Mr. Moore's concerns and confirmed that Mr. Moore was not there as "a representative appointed by the SSA. . . ." (Tr. 29). The ALJ stated that he would therefore treat Mr. Moore "simply . . . as a friendly witness . . . assisting the claimant, *who is here without a representative*. . . ." (Tr. 29). Thus, contrary to the Commissioner's statement in his memorandum, Mr. Moore was not serving as plaintiff's representative at the administrative hearing or at any step of the administrative proceedings. Furthermore, plaintiff suffers from severe mental impairments, and Dr. Buban testified that she assumed plaintiff is of borderline intellectual functioning based on his test scores. (Tr. 40). The ALJ's duty to ensure the record was fully and fairly developed was further heightened given these circumstances. *See Burrows*, 2012 WL 5411113, at *9. Finally, plaintiff decided to proceed without an attorney only after receiving assurances from the ALJ that the ALJ had all of the information necessary to proceed with the hearing. (*See* Tr. 26, wherein plaintiff stated - "[S]ince you said you have all the documentation, the information on me, I can go without a lawyer."). For these reasons, the ALJ was under a heightened duty to ensure that a full and fair administrative record was developed in this matter. *See Lashley*, 708 F.2d at 1051; *Vaca*, 2010 WL 821656, at *6.

The Court finds that the ALJ did not fulfill his duty to adequately and fairly develop the record regarding plaintiff's mental and physical impairments. The evidence pertaining to plaintiff's mental impairments included Mr. Moore's testimony at the ALJ hearing (Tr. 30-33); interrogatories completed by Dr. Buban (Tr. 293-97) and her medical expert testimony (Tr. 34-47); an assessment completed by the state agency reviewing psychologist, Dr. Patricia

11

Semmelman, Ph.D., in January 2008[3] (238-55), which was affirmed as written on July 16, 2008 (Tr. 266); the 2003-2007 records from plaintiff's incarceration at Warren Correctional Institute (Tr. 215-37); and treatment records from GCBHS for the period December 2008 to August 2009 (Tr. 268-92).

Mr. Moore briefly testified at the ALJ hearing regarding plaintiff's mental health treatment at GCBHS and his role as a substance abuse specialist. (Tr. 30-33). Mr. Moore testified he serves primarily as a supportive listener who collaborates with the GCBHS psychiatrist by passing on any concerning behavior he sees that would indicate a change in medication would be necessary to mitigate against auditory hallucinations, mood and sleep disturbance, and seizures. (Tr. 31). Mr. Moore testified that plaintiff had treated at GCBHS since January of 2008, during which time he had struggled a great deal with alcohol and drug use. (Tr. 30). Mr. Moore testified that plaintiff had been sober for six months at the time of the hearing but that residual symptoms had persisted even in the absence of substance abuse and during sustained periods of sobriety lasting three months or longer, most notably auditory hallucinations, depressed mood, and sleep disturbance. (*Id.*). He testified that plaintiff had symptoms consistent with a diagnosis of schizophrenia, paranoid type. (*Id.*).

At the hearing, Dr. Buban testified that she had reviewed plaintiff's medical records, which ended in August 2009. (Tr. 36). She stated that recent treatment records were not part of the evidence. (*Id.*). Dr. Buban testified that based on the testimony, it appeared plaintiff had relapsed after August of 2009, which Mr. Moore and plaintiff confirmed. (*Id.*). Plaintiff testified

---

[3] Dr. Semmelman found mild restrictions in activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation of an extended duration. (Tr. 248). She completed a mental RFC assessment in which she found some moderate limitations in mental functioning. (Tr. 252-53).

12

that he attempted suicide in August of 2009 by intentionally cutting himself, which led to a two-week admission to the psychiatric unit at University Hospital, and that this was his third suicide attempt. (Tr. 36-37, 39). Plaintiff testified that prior to the incident, he had been off of his medications for seven or eight days, and he had resumed drinking beer, smoking marijuana, and using crack cocaine. (Tr. 37). Plaintiff testified that "everything happens" when he is off his medication but that he had been "doing okay" since he had resumed taking his medication. (Tr. 37).

Dr. Buban identified plaintiff's impairments as schizoaffective disorder, mood or bipolar disorder, antisocial personality disorder, and alcohol and cannabis abuse. (Tr. 38). Dr. Buban testified that the written interrogatory answers she had provided prior to the administrative hearing (Tr. 293-97) could be amended based on the testimony provided at the hearing. (Tr. 39). In those interrogatory answers, Dr. Buban stated that plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no recent episodes of decompensation of extended duration. (Tr. 294). Dr. Buban's interrogatory answers stated that plaintiff did not meet the Listing, in part, because he had no record of "decompensation, emergency room crises, or hospitalizations." (Tr. 295). She testified at the hearing that plaintiff's August 2009 suicide attempt and hospitalization constituted an episode of decompensation and the interrogatory answers could be amended accordingly. (Tr. 39). Dr. Buban also testified that she had reviewed the prison records, which described plaintiff in November of 2007 predominantly as having "prison blues," and that the rest of the record was unremarkable for any symptoms. (Tr. 40). She assumed plaintiff was of borderline intellectual functioning based on his GAMA (General

Ability Measure for Adults) scores. (*Id.*). Dr. Buban stated that while plaintiff was in prison, his substance abuse was in "institutional remission," meaning substances were not available, and she described his psychological symptoms as "rather mild." (*Id.*).

Dr. Buban indicated that plaintiff appeared to be "pretty stable" and without "significant symptoms" based on her review of the record. (Tr. 41). She testified that the state agency reviewing psychologist's January 2008 mental RFC assessment found some inconsistency in the severity of the symptoms plaintiff reported because both the GCBHS treatment notes and the prison treatment records described plaintiff as "mostly stable" while on his medication. (*Id.*). However, Dr. Buban acknowledged that at the time she conducted her review, she "had no record of any decompensations, any emergency room visits or hospitalizations. So he looked to be pretty stable and not having significant symptoms." (*Id.*). The ALJ asked Dr. Buban what kind of records she would need to "complete [her] analysis," as it was now known that there was an "episode of decompensation that occurred more recently than our records reveal. . . ." (*Id.*). Dr. Buban replied:

> Well, in order to complete my analysis, because the testimony today is that he experiences hallucinations -- in the recent medical treating notes, what I would be looking for is to evaluate the level of severity of those particular symptoms, particularly across time since August of 2009 until the current time to see if that would either further reduce the residuals that I opined or would it in fact change my analysis and indicate a more serious level of functioning.

(Tr. 41-42).

Dr. Buban then opined based on the evidence that was available to her - *i.e.*, the treatment records from the state prison, the state agency reviewing psychologist's assessment, and the GCBHS treatment records up to August 2009 - that plaintiff was restricted to simple and some

14

detailed tasks, occasional contact with supervisors and coworkers, no public contact, and no strict production quotas or time standards. (Tr. 42).

At the conclusion of Dr. Buban's testimony, the ALJ informed plaintiff that the agency would normally have the records of plaintiff's August 2009 psychiatric hospitalization and it was unusual to not have those records in the file. (*Id.*). The ALJ indicated it was important for him to see the records. (Tr. 43). The ALJ informed plaintiff that the VE would probably testify that there were jobs available for individuals with the types of impairments Dr. Buban had identified. (*Id.*). The ALJ stated that in order to make a "fair decision," it was advisable for him to see the records from plaintiff's hospitalization following the suicide attempt and for Dr. Buban to give another set of opinions based on those records. (Tr. 43-44). The ALJ solicited Mr. Moore's assistance in helping plaintiff obtain the records, and Mr. Moore assured the ALJ he could assist plaintiff and that he had the necessary forms. (Tr. 44). The ALJ stated that he would leave the record open for 30 days and if he did not hear back by the end of that time period, he would assume plaintiff did not want him to see the records. (Tr. 44-45). The ALJ also stated, "I won't make any final decisions unless I hear back from you." (Tr. 45).

Dr. Buban reiterated the need to also review treatment records subsequent to plaintiff's August 2009 hospitalization, which the ALJ relayed to Mr. Moore. (*Id.*). Mr. Moore then brought to the ALJ's attention another episode of decompensation referenced in the GCBHS treatment notes, which occurred from April 22 to 26, 2009. (*Id.*). That episode apparently occurred when plaintiff had been using alcohol and marijuana and was hospitalized for "increased depression, thoughts of suicide, and self-mutilation." (Tr. 46-49). The ALJ indicated

that Dr. Buban needed this updated information also, and the ALJ stated he would give plaintiff an opportunity to obtain these records as well. (Tr. 50-51).

Plaintiff did not submit the additional records following the hearing. In his decision, the ALJ noted that the record remained open for a limited time following the hearing so that Mr. Moore could assist plaintiff in obtaining (1) the hospital records from April of 2009, (2) the hospital records from August of 2009, and (3) the updated treatment notes from GCBHS subsequent to August 2009. (Tr. 14). The ALJ stated that nothing further was submitted. (*Id.*). The ALJ decided to give "great weight" to Dr. Buban's testimony that plaintiff was able to perform "simple and detailed tasks in an environment without strict production quotas or strict time standards;" he was restricted to occasional contact with supervisors and co-workers; and he should not be required to interact with the public. (*Id.*). The ALJ determined that Dr. Buban had an opportunity to review the record and consider testimony from plaintiff and Mr. Moore, and her conclusions were consistent with those of the state agency reviewing psychologist, who noted some inconsistencies in plaintiff's reported symptoms and determined plaintiff could interact occasionally and superficially in a nonpublic work setting and cope with ordinary and routine changes in a work setting that was not fast-paced or highly demanding. (*Id.*).

A review of the record shows that the ALJ issued his decision without fully and fairly developing the record regarding plaintiff's mental impairments. It became clear during the ALJ hearing that evidence critical to an informed opinion by the ME, Dr. Buban, was not included in the record. Dr. Buban informed the ALJ that she would need to review updated medical records subsequent to August of 2009 in order to "complete [her] analysis" and determine if those records indicated a more serious level of functioning than shown by the records she had

16

reviewed. (Tr. 41-42, 45). The ALJ confirmed at the hearing that Dr. Buban would need to review those updated treatment records, as well as the records of plaintiff's April and August 2009 psychiatric hospitalizations. (Tr. 44, 45, 50-51). The ALJ acknowledged that medical evidence essential to an informed disability determination was missing from the record; that such evidence should have been included in the administrative record; and that it was necessary for him to review the missing evidence in order to render a "fair decision." (Tr. 42-44). Yet, despite expressly acknowledging the critical importance of obtaining the records and the possibility that the updated records would change Dr. Buban's analysis, the ALJ rendered a disability determination without obtaining the essential records but while affording "great weight" to Dr. Buban's opinions. (Tr. 14). This was despite Dr. Buban's testimony that she would need the updated treatment records "in order to complete [her] analysis." (Tr. 41-42). The above testimony by Dr. Buban, the ALJ's statements at the administrative hearing, and the information provided by both Mr. Moore and plaintiff show that the medical record in this case was incomplete and that the ALJ failed to fulfill his duty to adequately develop the record on which his determination of plaintiff's mental disability rested.

The ALJ also failed to fully and fairly develop the record pertaining to plaintiff's physical impairments. In his decision, the ALJ found that plaintiff has a severe seizure disorder impairment. (Tr. 11). The ALJ stated that plaintiff testified at the ALJ hearing that he has suffered from seizures since childhood, but the ALJ found the seizures are apparently managed with medication (Dilantin and Trileptol) as plaintiff submitted no records from a primary care physician or neurologist showing that the seizures are not controlled. (Id.). The ALJ relied solely on the assessment of the state agency reviewing physician, Dr. Jon Starr, M.D., to impose

restrictions against climbing ladders and work at unprotected heights or around hazardous machinery to account for limitations imposed by plaintiff's seizure disorder. (Tr. 14, citing Tr. 256-263). The reviewing physician completed a physical RFC assessment on February 4, 2008, based solely upon a review of plaintiff's prison records. (Tr. 256-63). The reviewing physician reported those records did not indicate "any severe physical limitations." (Tr. 261). He imposed moderate limitations on exposure to hazards as a protective measure because the prison records indicated that plaintiff had a history of seizures and was receiving medication. (Tr. 260).

Upon a review of the transcript of the ALJ hearing and decision, the Court finds that the ALJ failed to develop plaintiff's testimony regarding his seizure disorder. The ALJ posed a limited number of questions regarding plaintiff's seizure disorder at the hearing. Plaintiff testified that at the time of the hearing, he was taking 300 mg of Dilantin three times a day and 600 mg of Triliptan twice a day to control his seizures, which he had been experiencing since he was seven years old. (Tr. 59, 61-62). He testified that he saw a doctor every three months for treatment of his seizures. (Tr. 60). Plaintiff testified that his seizures had started worsening the year prior to the hearing to the point where he was having them two or three days a week. (Tr. 59). Plaintiff testified that he can experience seizures even when he is taking his medication. (Tr. 60). Plaintiff testified that blinking lights or a loud noise can trigger a seizure, and Mr. Moore testified that he knew of two instances where plaintiff had experienced a seizure. (Tr. 60-61). When the ALJ asked whether there was any type of work plaintiff believed he could do, plaintiff testified that employers were afraid to hire him because he "had a few seizures on the job site --" (Tr. 63). Plaintiff also testified that he does not have a driver's license and that he either uses public transportation or relies on Mr. Moore for transportation. (Tr. 62-63).

18

The ALJ asked plaintiff few pertinent follow-up questions to ascertain the severity of his seizure impairment. (Tr. 59-63). The ALJ did not question plaintiff as to the frequency of the seizures. Nor did the ALJ ask plaintiff to describe the nature of his seizures. The ALJ also neglected to question plaintiff about the instances where plaintiff had seizures on job sites. In addition, the ALJ failed to explore any limitations imposed by plaintiff's seizures, such as restrictions against driving or exposure to environmental conditions. The ALJ thereby failed to fully and fairly develop the record regarding plaintiff's seizure disorder through a conscientious probing of all relevant facts. *See Lashley*, 708 F.2d at 1052. *See also Wright-Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, 396 (6th Cir. 2010) ("the ALJ has an inquisitorial duty to seek clarification on material facts.").

Moreover, although it came to the ALJ's attention during his questioning of plaintiff that plaintiff was seeing a physician every three months for his seizure disorder, the ALJ failed to attempt to obtain any medical records regarding plaintiff's seizure disorder. The ALJ thereby violated his "duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *See Burrows*, 2012 WL 5411113, at *9.

For these reasons, the ALJ did not fulfill his heightened duty in this case to ensure that the record was adequately and fairly developed as to plaintiff's mental and physical impairments. There is nothing in the record to demonstrate that plaintiff, an individual of probable borderline intellectual functioning with multiple severe mental impairments, had a grasp on how to adequately present his case or obtain the necessary records. The Commissioner attempts to shift the responsibility for adequately developing the record onto plaintiff based on (1) the appearance of Mr. Moore at the hearing and his assurances to the ALJ that he would assist plaintiff in

19

obtaining the necessary records, and (2) plaintiff's retention of counsel on the day he asked the

Appeals Council to review the ALJ's decision. (Doc. 12 at 8). However, even assuming having

the assistance of a representative lessens the heightened duty an ALJ owes a pro se plaintiff, the

special duty the ALJ owed plaintiff in this case was not in any way altered by Mr. Moore's

participation in the administrative proceeding because the ALJ expressly limited Mr. Moore's

role to "simply" one of "friendly witness." (Tr. 29). Having thus limited Mr. Moore's role, it

was neither reasonable nor fair for the ALJ to draw inferences adverse to plaintiff in his decision

based on plaintiff's failure to acquire critical medical evidence. Furthermore, plaintiff's

retention of counsel following issuance of the ALJ's decision did not somehow relieve the ALJ

of his burden to fully develop the testimony at the ALJ hearing and to compile an adequate

record on which to base his decision. Because the ALJ violated his legal duty to fully and fairly

develop the record on which his decision rests, plaintiff's first assignment of error should be

sustained.[4]

### 2. The ALJ's decision is not supported by substantial evidence.

In view of the Court's finding that the ALJ failed to fully and fairly develop the record on

which his decision was based, it necessarily follows that the ALJ's decision is not supported by

substantial evidence. *See Burrows*, 2012 WL 5411113, at *12 (citing *Kane v. Heckler*, 731 F.2d

1216, 1219 (5th Cir. 1984) ("when an ALJ fails to develop the record, he does not have sufficient

facts to make a decision and, thus, his decision is not supported by substantial evidence")). The

ALJ's determination of non-disability clearly is not supported by substantial evidence in this

---

[4]Because the records from plaintiff's treating providers have not yet been made part of the record, plaintiff's
argument that the ALJ erred by failing to order consultative evaluations is premature and the Court finds it
unnecessary to address the argument. *See* 20 C.F.R. 416.916(e) ("Generally, we will not request a consultative
examination until we have made every reasonable effort to obtain evidence from your own medical sources.").

case because the ALJ gave "great weight" to Dr. Buban's testimony in determining the severity of plaintiff's mental impairments and resulting limitations (Tr. 14), even though the ME testified she needed additional evidence to complete her analysis on these matters. (Tr. 41-42). Furthermore, the ALJ relied on the absence of records from any primary care physician or neurologist to find that plaintiff's seizures are apparently controlled by medication (Tr. 11), despite plaintiff's testimony that he continued to experience seizures even when he took his medication (Tr. 60) and evidence that plaintiff obtains regular medical treatment for his seizures. Because the ALJ's decision is based on an incomplete record and is not supported by substantial evidence, plaintiff's second assignment of error should be sustained.

### III. This matter should be reversed and remanded for further proceedings.

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Sec. of HHS*, 17 F.3d 171, 176 (6th Cir. 1994). Reversal and remand are required for the gathering of additional evidence, proper analysis of plaintiff's physical and mental impairments, and continuation of the sequential evaluation process. On remand, the Commissioner should obtain (1) copies of records from GCBHS subsequent to August 2009, (2) records of plaintiff's April and August 2009 psychiatric hospitalizations, and (3) treatment records of plaintiff's primary care physician and any treating neurologist. All such evidence should be considered by the Commissioner in evaluating whether plaintiff is disabled under the Act.

21

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further

proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).


Date: 2/6/2013                                    _Karen L. Litkovitz_
                                                  Karen L. Litkovitz
                                                  United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ANDREW THRASHER,                                    Case No. 1:12-cv-151
          Plaintiff,                               Beckwith, J.
                                                   Litkovitz, M.J.
     vs.


COMMISSIONER OF
SOCIAL SECURITY,
               Defendant.


### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).


23